IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| LIONEL MONTANEZ<br>735 Stella Street<br>Jeannette, PA 15644 | :<br>:<br>: CIVIL ACTION NO.: _____<br>: |
| Plaintiff, | : JURY TRIAL DEMANDED<br>: |
| v. | :<br>: |
| HESSIAN CO., LTD. d/b/a<br>FADDIS CONCRETE PRODUCTS<br>2206 Horseshoe Pike<br>Honey Brook, PA 19344 | :<br>:<br>:<br>:<br>: |
| Defendant. | : |

---

## **COMPLAINT – CIVIL ACTION**

Plaintiff Lionel Montanez ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Defendant HESSIAN CO., LTD. d/b/a Faddis Concrete Products ("Defendant"), alleges as follows:

### **INTRODUCTION**

1. Plaintiff brings this Complaint contending that discriminated against him and ultimately terminated his employment because of his disability, past record of impairment, and/or because it regarded him as disabled, and failed to provide him with a reasonable accommodation in connection with his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

### **PARTIES**

2. Plaintiff Lionel Montanez is a citizen of the United States and Pennsylvania, and currently maintains a residence at 735 Stella Street, Jeannette, PA 15644.

3. Upon information and belief, Defendant HESSIAN CO., LTD. d/b/a Faddis Concrete Products is a business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office address registered with the Pennsylvania Secretary of State of 29 Hessian Blvd., Reading, PA 19607, and a corporate headquarters at 2206 Horseshoe Pike, Honey Brook, PA 19344.

## JURISDICTION AND VENUE

4. On or around August 16, 2018, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as Charge No. 530-2018-06007. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practices alleged herein.

5. On May 19, 2021, the EEOC issued a Dismissal and Notice to Right to Sue upon Request, noting that more than one hundred and eighty days (180) had passed since the filing of Plaintiff's Charge and that the EEOC was terminating its processing of the Charge.

6. On or about August 10, 2021, within the relevant statutory timeline, Plaintiff filed the instant matter.

7. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's federal law claims.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Defendant hired Plaintiff on or about January 15, 2018, for the position of Laborer.

14. Sometime on or around March 8, 2018, Plaintiff fell down a flight of stairs at Plaintiff's home, after which Plaintiff attempted to drive to work.

15. However, Plaintiff soon realized he was unable to make it into work due to traumatic head and back pain from the accident, and instead drove to the hospital.

16. There Plaintiff's examining doctor informed Plaintiff he was too weak to return to work.

17. Upon further tests, it was determined that Plaintiff's blood pressure was dangerously low and that Plaintiff's heart condition was worsening.

18. The diagnosis of Plaintiff's heart condition was labeled Bradycardia, a slower-than-normal heart rate caused from heart disease.

19. Sometime on or around March 9, 2018, Plaintiff gave the medical documents relating to his hospital visit and heart condition to Plaintiff's direct supervisor and Plant Operator Josh (Last Name Unknown) (hereinafter, "Josh LNU").

20. Josh LNU told Plaintiff that Defendant, "Can't have [Plaintiff] work because it'll be a liability issue," and that Plaintiff would need to bring him a doctor's note.

21. Upon receipt of Plaintiff's doctor's note, which stated that Plaintiff was to be put on light duty, and not to lift more than twenty-five (25) pounds, Defendant contacted Plaintiff's doctor.

22. Soon after, Plaintiff received a call from Human Resources in which Plaintiff's doctor's recommendation of light duty was denied.

23. In this regard, the Human Resources representative asked Plaintiff, sarcastically, "You want me to invent a job for you where you don't need to lift more than twenty-five (25) pounds?"

24. The Human Resources representative proceeded to tell Plaintiff that he should fill out a letter of resignation.

25. When Plaintiff asked Human Resources about his civil rights, including Plaintiff's right to be considered for light duty, Plaintiff was told that Plaintiff did not have any rights.

26. Following Plaintiff's conversation with Human Resources, Plaintiff contacted the EEOC to inquire about the disability discrimination Defendant was subjecting him to.

27. Sometime thereafter, on or around March 28, 2018, Alex (Last Name Unknown) (hereinafter, "Alex LNU") from Defendant contacted Plaintiff and stated that Plaintiff was no longer welcome on the premises, informing him that he was being terminated.

28. Upon information and belief, Plaintiff was subsequently replaced by a non-disabled individual.

29. Plaintiff's bradycardia and syncope constitute disabilities within the meaning of the ADA and PHRA in that, when active, they substantially limited Plaintiff in one or more

major life activities, including, but not limited to standing, performing manual tasks, pushing, pulling, lifting, caring for oneself, and working.

30. Plaintiff a qualified individual with a disability within the meaning of the ADA and/or PHRA in that he was capable of performing the essential functions of his job with or without a reasonable accommodation, including, but not limited to a brief medical leave of absence and/or modification of non-essential tasks.

31. As indicated by the Position Statement dated October 24, 2018 Defendant submitted to the EEOC responding to Plaintiff's Charge of Discrimination, Defendant incorrectly and unreasonably believed that Plaintiff was incapable of performing the essential functions of his job, and represented a safety hazard to his co-workers, because of his disability and/or because Defendant regarded Plaintiff as disabled in violation of the ADA and PHRA.

32. It is believed and therefore averred that Defendant terminated Plaintiff because of his actual disability, past record of impairment, and/or because it regarded Plaintiff as disabled within the meaning of the ADA and PHRA.

33. Defendant failed to engage in the interactive accommodation process required under the ADA and PHRA and terminated Plaintiff in retaliation for his requests for an accommodation.

34. Plaintiff has, because of Defendant's unlawful, discriminatory, and retaliatory actions alleged herein, struggled to obtain other employment and has been forced to expend significant out of pocket expenses on health care.

35. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, lost employee benefits, lost earnings and earnings potential, and other economic damages, and has also suffered

mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to him professional reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION & RETALIATION

36. Paragraphs 1 through 35 are hereby incorporated by reference as though the same were fully set forth at length herein.

37. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act.

38. At all times relevant hereto, Defendant employed at least fifteen (15) employees.

39. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

40. Defendant was aware of Plaintiff's disability, record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

41. Upon information and belief, Plaintiff has since been replaced by a non-disabled individual.

42. Defendant failed to engage in an interactive process with Plaintiff to determine whether he could perform the essential functions of his job with or without a reasonable accommodation, such as a brief medical leave of absence or a modification of non-essential tasks.

43. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees have violated the ADA by discharging Plaintiff because of his disability, his record of disability/impairment, because they regarded him as being disabled within the meaning of the ADA, and/or in retaliation for requesting a reasonable accommodation for his disability.

44. As a result of Defendant' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and employee benefits in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

d) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

**COUNT II
PENNSYLVANIA HUMAN RELATIONS ACT
43 P.S. § 951, *et seq.*
<u>DISCRIMINATION & RETALIATION</u>**

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the protected rights of Plaintiff.

47. Plaintiff is a qualified individual with a disability within the meaning of the PHRA in that, at all times relevant hereto, he suffered from one or more physical conditions which substantially limited him in one or more major life activities, as stated above.

48. Plaintiff was/is able to perform the essential functions of his job with or without a reasonable accommodation.

49. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of his actual and/or perceived disabilities and in retaliation for his requests for reasonable accommodations in connection thereto.

50. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Compensatory damages in an amount to be determined at trial;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

        Respectfully submitted,

        **MURPHY LAW GROUP, LLC**

By:   /s/ Michael Groh
       Michael Murphy, Esq.
       Michael Groh, Esq.
       Eight Penn Center, Suite 2000
       1628 John F. Kennedy Blvd.
       Philadelphia, PA 19103
       TEL: 267-273-1054
       FAX: 215-525-0210
       murphy@phillyemploymentlawyer.com
       mgroh@phillyemploymentlawyer.com
       Attorneys for Plaintiff

Dated: August 10, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.