IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIONEL MONTANEZ<br>    *Plaintiff,*<br><br>  v.<br><br>HESSIAN CO., LTD. d/b/a<br>FADDIS CONCRETE PRODUCTS<br>    *Defendant.* | CIVIL ACTION<br>NO. 21-3567 |

**PAPPERT, J.**                                **March 15, 2022**

**MEMORANDUM**

  Lionel Montanez claims his former employer Hessian Co. Ltd. d/b/a Faddis Concrete Products discriminated and retaliated against him in violation of the Americans with Disabilities Act and the Pennsylvania Human Relations Act when he was terminated instead of being given a reasonable accommodation following his bradycardia diagnosis. Faddis moves to dismiss his Complaint and the Court denies its motion.

I

  Faddis hired Montanez as a laborer in January 2018. (Compl., ECF 1, ¶ 13.) On March 8, he fell down a flight of stairs at home and injured his head and back. (*Id.* ¶ 14.) Montanez went to the hospital where the attending doctor diagnosed him with bradycardia, "a slower-than-normal heart rate," and determined Montanez's blood pressure was dangerously low, his heart condition was getting worse and he was too weak to return to work. (*Id.* ¶¶ 16-18.)

  The next day Montanez gave documents related to his hospital visit and heart condition to his direct supervisor. (*Id.* ¶ 19.) The supervisor said Montanez could not

work because it would be a "liability issue" and he needed a doctor's note. (*Id.* ¶ 20.) Montanez produced a note recommending he be put on light duty and not lift more than twenty-five pounds. (*Id.* ¶ 21.) In response, Faddis contacted Montanez's doctor, but declined to implement his recommendations. (*Id.* ¶¶ 21-22.)

Instead, Faddis's human resources representative said, "[y]ou want me to invent a job for you where you don't need to lift more than twenty-five . . . pounds?" and suggested Montanez fill out a letter of resignation. (*Id.* ¶¶ 23-24.) Montanez asked about his "civil rights," including his right to be considered for light duty work, and the HR representative replied that he had none. (*Id.* ¶ 25.) After the interaction Montanez contacted the EEOC to ask about Faddis's "disability discrimination." (*Id.* ¶ 26.) Faddis fired Montanez on March 28, 2018, telling him he was "no longer welcome on the premises," and ultimately replaced him with a non-disabled individual. (*Id.* ¶¶ 27-28.) Faddis did not "engage in an interactive process with" Montanez to determine whether he "could perform the essential functions of his job with or without a reasonable accommodation, such as a brief medical leave of absence or modification of non-essential tasks." (*Id.* ¶ 42.)

Montanez filed an EEOC discrimination charge on August 16, 2018. (*Id.* ¶ 4.) After the EEOC issued a Dismissal and Notice of Right to Sue upon Request on May 19, 2021, Montanez filed this suit alleging discrimination and retaliation under the ADA and PHRA. (*Id.* ¶¶ 5-6, 43, 49.)

II

To satisfy Federal Rule of Civil Procedure 12(b)(6), Montanez's Complaint must include facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the facts pled "allow [ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Well-pleaded factual allegations are presumed to be true and construed in the light most favorable to the plaintiff.  *Id.* at 679; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Conclusory assertions of fact and legal conclusions are not.  *See Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

To decide a motion to dismiss without converting it into a summary judgment motion, courts consider only:  (1) a complaint's allegations; (2) exhibits attached to it; (3) other documents that "are integral to" the complaint or that it "explicitly relie[s] upon"; and (4) matters of public record.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis omitted) (citing *In re Burlington Coat Factory Sec. Litig.*,114 F.3d 1410, 1426 (3d Cir. 1997) and *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (further citations omitted)).  Lack of notice, "the primary problem raised by looking to documents outside the complaint," is absent when a plaintiff has actual notice of the documents and its pleading relies on them.  *In re Burlington*, 114 F.3d at 1426.

### III

### A

"Discrimination under the ADA encompasses not only adverse actions motivated

3

by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To plead a claim for ADA and PHRA[1] disability discrimination, Montanez must allege facts raising a reasonable expectation that he (1) has a disability, (2) is a qualified individual, and (3) suffered an adverse employment action because of his disability. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009). For purposes of its motion, Faddis does not contest that Montanez has a disability or that he suffered an adverse action. It argues he has not sufficiently alleged he is a "qualified individual": one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). *See* (Def.'s Br., ECF 9 at 5-7).

"Whether a job duty is an 'essential function' turns on whether it is 'fundamental' to the employment position." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006) (quoting 29 C.F.R. § 1630.2(n)(1)). Faddis argues Montanez has not shown he "could have performed the essential functions of his position as a Laborer in a concrete manufacturing plant with or without reasonable accommodations." (Def.'s Br., ECF 9, at 6.) It contends it is "self-evident" that a concrete manufacturing laborer "must be able to do heavy lifting." (*Id.*) In response, Montanez points to the EEOC Position Statement Faddis submitted in response to his Charge of Discrimination. (Pl.'s Opp'n Mem., ECF 10-1 at 6-7.) It is attached as an exhibit to his Response (Pl.'s Opp'n Mem., Ex. A., ECF 10-2), but not to his Complaint or to Faddis's Motion. The

---

[1] Montanez's PHRA claims are "coextensive with his ADA . . . claims," so the Court considers them together. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996); *see also Taylor*, 184 F.3d at 306 ('[O]ur analysis of an ADA claim applies equally to a PHRA claim.").

4

Court may consider the Position Statement because Montanez's Complaint explicitly refers to it, alleging it shows Faddis "incorrectly and unreasonably believed that [he] was incapable of performing the essential functions of his job . . . ." (Compl., ¶ 31.)

The "General Laborer" job description Faddis attached to its EEOC Position Statement does not identify an ability to lift as an "Essential Dut[y] & Responsibilit[y]" and lists the position's "Physical Demands" as requiring only an ability to "lift and/or move *up to* 25 pounds." (Pl.'s Opp'n Mem., ECF 10-1 at 7 (quoting Pl's Opp'n Mem., Ex. A., ECF 10-2, at ECF p. 7-8) (emphasis added).) While a doctor recommended Montanez not lift anything weighing over twenty-five pounds (Compl. ¶ 21), according to Faddis' job description his job did not require him to be able to do more. At this stage of the case, Montanez's Complaint and the job description are enough to allow the Court to draw the reasonable inference that Montanez was qualified to perform the essential functions of Faddis's General Laborer position *without* reasonable accommodation.

Moreover, Faddis's job description explicitly states that "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential functions." (Pl's Opp'n Mem., Ex. A., ECF 10-2, at ECF p. 8.) The company's obligation to provide a reasonable accommodation did not require it to create a new job, but it might have been required to transfer Montanez to a different position. *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 230 (3d Cir. 2000). *See* (Compl., ¶ 23.) If an employee requests an accommodation, as Montanez contends he did, the employer and employee must determine an accommodation that is reasonable through a "flexible, interactive process." *Hohider*, 574 F.3d at 187. Both employers and employees "have a

5

duty to assist in the search for [an] appropriate reasonable accommodation and to act in good faith." *Taylor*, 184 F.3d at 312 (internal quotation marks and citations omitted).

Faddis argues Montanez's Complaint should be dismissed because he has not alleged facts to show a vacant, funded, light duty laborer job existed. (Def.'s Mem., ECF 9, at 8.) But "an employer who has received proper notice cannot escape its duty to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation." *Taylor*, 184 F.3d at 317. Montanez has shown he gave Faddis notice that he might require a reasonable accommodation and has alleged facts permitting the Court to reasonably infer that Faddis did not engage in an interactive accommodations process, so Faddis's "argument places the proverbial 'cart before the horse.'" *Hawkins v. W. Penn Allegheny Health Sys.*, No. 13-1334, 2014 WL 5803112, at *7 (W.D. Pa. Nov. 7, 2014). *See* (Compl. ¶¶ 23-25, 42.) Ultimately Montanez cannot recover on a failure to accommodate claim without showing that a reasonable accommodation was possible. *Donahue*, 224 F.3d at 234. But where he asked to be considered for "light duty" work and Faddis's alleged response was to inform him that he "did not have any rights" and should prepare his resignation letter (Compl. ¶¶ 24-25), "resolution of this issue . . . is best reserved for the summary judgment stage following a full opportunity for discovery." *Hawkins*, 2014 WL 5803112, at *7 (citation omitted); see also *Williams v. Am. Lumpers Servs., LLC*, No. 20-1342, 2021 WL 4942677, at *7 (D. Md. Oct. 22, 2021) (holding that by failing to engage in the interactive process, the defendant deprived the plaintiff "of the very information it" argued was "missing from the Amended Complaint").

B

Faddis argues Montanez's retaliation claims should be dismissed for the same reasons as his discrimination claims: he has not alleged he is a qualified individual and he has not shown a vacant, funded, light-duty laborer position existed. (Def.'s Mem. at 5-9.) However, Montanez is not required to allege he was a "qualified individual with a disability" to plead his retaliation claims. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997). Rather, he must show: (1) protected employee activity, (2) adverse employment action contemporaneous with or following the protected activity; and (3) a causal connection between the protected activity and the adverse action.[2] *Id.* at 500 (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)).

When he returned to work after falling, Montanez gave Faddis a doctor's note outlining recommended changes to his work due to his bradycardia. (Compl. ¶¶ 18, 21). A good faith request for accommodation has been recognized as ADA-protected activity. *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2018 WL 4145037, at *4 (E.D. Pa. Aug. 30, 2018) (citing *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003)).

Montanez alleges he submitted the note after Faddis's request "on or around March 9, 2018." (Compl. ¶ 19.) "Soon after," Faddis declined to implement the doctor's recommendations, instead telling him he "should fill out a letter of resignation." (*Id.* ¶¶ 22-24). Montanez was terminated on March 28, 2018. (*Id.* ¶ 27). Termination is clearly an adverse employment action, *see Dreilbelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 2020) and Montanez has alleged enough facts to allow the Court to

---

[2]   The Third Circuit has interpreted the ADA and PHRA's anti-retaliation provisions similarly. *See Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567. Neither party has argued they should be interpreted differently in this case.

infer a causal connection between his termination and his request for accommodations.

When considering whether conduct was retaliatory, Courts may consider "the temporal proximity between the protected activity and the alleged discrimination," whether it is "unusually suggestive of retaliatory motive" and whether there is "a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citations and internal quotations omitted), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  These "are not the exclusive ways to show causation" and the facts "looked at as a whole[ ] may suffice to raise the inference."  *Id.* (citation and internal quotations omitted).  Montanez was fired within three weeks of his request for light duty work and Faddis's HR representative responded to his request by telling him he should prepare a resignation letter.  At this stage of the case, this is enough to raise a reasonable expectation that discovery may reveal evidence of retaliatory motive.  *See Shellenberger*, 318 F.3d at 189 ("[T]here is more than temporal proximity here.").

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.
